*902 OPINION OF THE COURT
Thomas A. Dickerson, J.

A Jolting Experience

On March 23, 1994 the plaintiff, Andrew Weisz (Weisz), was driving his 1988 Mitsubishi Galant Signa (the Galant) north on Central Park Avenue in the City of Yonkers, New York, when he suddenly came upon a large pothole adjacent to a storm sewer. The encounter was a jolting experience, to be sure, blowing out a tire and damaging the tire rim, connecting strut and tie rod. Weisz repaired the damage at a cost of $470.66.

How Large Was The Pothole?

The pothole in question was very large measuring, approximately, three feet by three feet and being several inches deep. It was typical of the large crater-like potholes that had developed during the long, hard winter of 1994 (see, e.g, Di Pasquasio v City of Yonkers, NYLJ, Sept. 16, 1994, at 31, col 1 [Yonkers City Ct]).
"The Court takes judicial notice of the severe snow and ice storms that bombarded the City of Yonkers in early 1994. The response of the City to removing the ever accumulating snow and ice was described by many as 'downright awful’ * * *
"The aftermath of this severe winter weather was a bumper crop of, at least, 5,000 potholes, many of which were referred to as 'deep and nasty,’ 'Like a mine field’, 'it’s a huge crater’ and 'big enough to fit a family of four in’ * * * 'Those are just a few of the colorful descriptions that readers phoned in regarding the "Potholes from Hell” that invaded Yonkers in recent weeks.’ ” (Supra, at 31, col 1.)

Plaintiff Files A Claim

Initially, Weisz filed a notice of claim with the State of New York (the State). However, the State rejected his claim because the City of Yonkers (the City) was responsible. ("As I explained to you, the section of Route 100 which was the location of your accident is maintained by the City of Yonkers under an Arterial Highway Maintenance Agreement. Accordingly, your notice of claim should have been filed with the City of Yonkers” [plaintiff’s exhibits 6-7]). Weisz then filed a notice of claim with the City which was also rejected.

Notice Of The Pothole

The City of Yonkers refused to compensate Weisz for the damage to his Galant on the grounds that it did not receive no *903 tice of the existence of the pothole before the accident. At trial the City produced as a witness Joseph De Palma (De Palma), a road maintenance supervisor responsible for the repair of potholes. De Palma testified that he reviewed the City’s "pothole” files (defendant’s exhibit A) and found no notice of the pothole which had wounded Weisz’s Galant.

The Motion To Dismiss

The plaintiff commenced this lawsuit on June 30, 1995. The State sought a dismissal on the grounds that plaintiff had failed to commence this lawsuit in accordance with the time limitations set forth in General Municipal Law § 50-i. The court finds that the instant lawsuit was timely commenced. The State’s motion is, therefore, denied.
DISCUSSION
In this action the plaintiff seeks the cost of repairing his Galant after it encountered a pothole on a State highway maintained by the City. Based upon the foregoing the plaintiff has stated a cognizable claim of negligence against the City and the State.

Duty To Provide Safe Streets

The City and the State have a duty to properly maintain their streets and highways in a safe condition. Citizens and taxpayers have a right, both at common law and by statute, to expect the City and the State to routinely inspect and maintain safe streets and highways. These expectations are reasonable (see, e.g., Tomassi v Town of Union, 46 NY2d 91, 98 [1978]; Gonzalez v City of New York, 148 AD2d 668, 670 [1989] ["A municipality is obligated to keep the streets within its jurisdiction in a reasonably safe condition for travel”]; Di Pasquasio v City of Yonkers, supra; Rohweller v State, 90 AD2d 650 [1982]; Gaines v Long Is. State Park Commn., 60 AD2d 724, 725 [1977] ["(State) highways (must be maintained) in a reasonably safe condition”]; Rinaldi v State of New York, 49 AD2d 361, 363 [1975]; Coco v State of New York, 123 Misc 2d 653, 654 [1984] ["State is required to use reasonable care in maintaining its highways”]; Annotation, Liability, in Motor-Vehicle Related Cases, of Governmental Entity for Injury or Death Resulting from Failure to Repair Pothole in Surface of Highway or Street, 98 ALR3d 101).

Safety Takes A Winter Break

The State asserts that section 58 of the Highway Law absolves the City of liability for the plaintiff’s claim ("The *904 state shall not be liable for damages suffered by any person from defects in state highways, except between the first day of May and the fifteenth day of November on such highways as are maintained by the state”). (See, e.g., Queenan v State of New York, Ct Cl, Aug. 24, 1993, Corbett, J., claim No. 87217, motion No. M-47831 ["The purpose and scope of Highway Law 58 are apparent from the very language; specifically, the restriction of liability for highway defects in winter months. One can easily infer that the intent was to limit the State’s liability for winter weather-related defects, most typically potholes * * * a legislative declaration that the State has no duty to patrol for and repair potholes during the winter months”].)

Highway Law § 58 Does Not Preempt Local Law

Highway Law § 58 does not preempt the duties and obligations of the City to those persons who choose to drive their vehicles on the streets and highways owned and/or maintained by the City, for the following reasons. First, it was the State which informed the plaintiff that his claim should be filed with the City, and not the State, because the City maintains the subject highway. Second, the clear intent of Highway Law § 58 was to limit the liability of the State for "defects in state highways * * * maintained [and controlled] by the state”, not by the City. Third, the inherent cynicism of Highway Law § 58, i.e., that travelers cannot and should not expect to drive on safe highways during the winter months, is unacceptable in the City of Yonkers. The State, with the seeming acquiescence of the City’s attorneys, would redefine the City’s duties and obligations to its taxpayers and citizens without giving its legislative branch, the Yonkers City Council, the opportunity to formulate, hold public hearings and then pass a local version of Highway Law § 58. It is highly unlikely, of course, that an aroused electorate would tolerate such a cynical piece of legislation.

The Notice Issue

The State and the City assert that they were never informed of the existence of the subject pothole. Under appropriate circumstances such a defense may be viable. Generally, municipalities and the State have the power to insulate themselves for damages resulting from nonfeasance (Drzewiechki v City of Buffalo, 51 AD2d 870, 871 [1976]) by requiring notice of the existence of a defective highway condition before the accident (see, e.g., Second Class Cities Law § 244; Coco v State of New *905 York, supra, at 654 [actual or constructive notice of oil slick]; Rinaldi v State of New York, supra, at 363 [actual or constructive notice of decaying tree]; Matthews v State of New York, 14 Misc 2d 438 [1958] [actual notice of pothole]; MacMullen v City of Middletown, 187 NY 37 [1907]; Fullerton v City of Schenectady, 285 App Div 545, affd 309 NY 701 [1955]).

Constructive Notice

The notice requirement may be met by proof of constructive notice of the pothole (see, e.g., Blake v City of Albany, 48 NY2d 875, 877-878 [1979] [depressed condition of defective catch basin should have been noticed]; Klimek v Town of Ghent, 114 AD2d 614 [1985]; Di Pasquasio v City of Yonkers, supra [pothole three feet by three feet and eight inches deep should have been noticed]; Rinaldi v State of New York, supra, at 363 ["clearly visible alert signals existed (of tree decay) * * * heralded the distinct probability of impending danger”]; Gaines v Long Is. State Park Commn., supra, at 725 [pothole existed for 34 hours]; Miner v State of New York, 196 Misc 752, 755 [1949] [two- week-old pothole "measuring 4 to 5 feet in length, 5 to 6 inches in width, and 3 to 4 inches in depth”]).
In this case the plaintiff produced photographs of the three-foot by three-foot pothole which damaged his Galant. These photographs show a very large pothole that must have been growing for days or weeks. Hence, it is proper to presume that the City and the State knew or should have known of the subject pothole and repaired it.
DAMAGES
The court finds that the City and the State were on notice of the subject pothole before the accident, were under a duty to repair it and their failure to do so was the proximate cause of the damage sustained by the plaintiffs Galant. The plaintiff was damaged therefrom and is hereby awarded damages of $470.66.